IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Alfred Cleveland,                                    Case No. 1:10 CV 148

                    Petitioner,                      MEMORANDUM OPINION
                                                     AND ORDER
          -vs-
                                                     JUDGE JACK ZOUHARY
Margaret Bradshaw, Warden,

                    Respondent.


## INTRODUCTION

This matter comes before the Court on Petitioner Alfred Cleveland's Petition for Writ of

Habeas Corpus (Doc. No. 1).  Respondent Margaret Bradshaw, Warden of the Richland Correctional

Institution, filed a Motion to Dismiss the Petition as untimely (Doc. No. 10).  Petitioner opposed (Doc.

No. 13).  This Court has jurisdiction under 28 U.S.C. § 2254(a).

The case was referred to Magistrate Judge McHargh for a Report and Recommendation

("R&R") pursuant to Local Rule 72.2.  The Magistrate recommended this Court deny the Petition

(Doc. No. 15); Petitioner filed an Objection (Doc. No. 18); and Respondent filed a Response (Doc.

No. 19).  Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B)

& (C), this Court has made a *de novo* determination of the Magistrate's findings and adopts the

recommendation to deny the Petition.

## BACKGROUND

The R&R accurately recites the relevant factual and procedural background from the record, and this Court adopts them in their entirety (Doc. No. 15, at 2-12).  Briefly, Marsha Blakely was murdered in 1991.  A witness to the murder eventually came forward, implicating Petitioner and several other men. Petitioner was indicted and, in 1996, convicted of Blakely's murder. *State v. Cleveland*, No. 96CA006357, 1997 WL 104653, at *1 (Ohio Ct. App. 1997).  Petitioner appealed his conviction, which was affirmed by the Ohio court of appeals.  A further appeal to the Ohio Supreme Court was denied as not involving any substantial constitutional question.  While this direct appeal was pending, Petitioner's motion for a new trial filed with the trial court was also denied and was affirmed on appeal.

Almost ten years later, Petitioner filed for post-conviction relief and a new trial, based in part on the allegedly recanted testimony of State witness William Avery, Jr.  The trial court set the matter for hearing to consider the testimony of Avery.  At the hearing, the State declined to grant Avery immunity from prosecution for perjury and Avery refused to testify after invoking his rights under the Fifth Amendment.  The trial court denied the motion for a new trial and for post-conviction relief.

Petitioner appealed the denial to the Ohio court of appeals, which affirmed, and to the Ohio Supreme Court, which denied review.  Thereafter, he filed this Petition for Writ of Habeas Corpus.

## STANDARD OF REVIEW

When a federal habeas claim has been adjudicated by the state courts, 28 U.S.C. § 2254(d)(1) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." A federal court may grant habeas relief if the state court arrives at a decision

2

opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable," and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-411; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(e)(1), findings of fact made by the state court are presumed correct, and rebuttable only by clear and convincing evidence to the contrary. *McAdoo v. Elo,* 365 F.3d 487, 493-494 (6th Cir. 2004). Furthermore, "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

## DISCUSSION

The Magistrate recommended dismissing the Petition as time-barred. Specifically, the Magistrate determined that the one-year statute of limitations expired in May 1999 and that Petitioner is not entitled to a later start date under Section 2244(d)(1)(D) because the factual predicate upon which his claim is based -- Avery's recantation and other evidence -- could have been discovered at the time of the trial. Furthermore, the Magistrate found that Petitioner was not entitled to equitable tolling because he did not present any new, reliable evidence to establish a credible claim of actual innocence.

Petitioner now argues the Magistrate erred in the following four ways when he: (1) improperly assessed the reliability of Avery's 2006 recantation; (2) improperly concluded that the

2006 recantation, as well as additional pieces of evidence, were not new; (3) did not apply the proper probabilistic standard under *Schlup v. Delo,* 513 U.S. 298, 325 (1995); and (4) did not consider the 2006 recantation in light of all the evidence (Doc. No. 18, at 3-4).  Each objection will be addressed in turn.

### Avery's Recantation

Actual innocence equitably tolls the limitations period for filing a habeas petition.  Under the standard set forth is *Schlup*, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 327.  In determining whether a petitioner has met this standard, a court must consider all the evidence, without regard to its admissibility.  *House v. Bell*, 547 U.S. 518, 538 (2006).  "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'"  *Id.* (quoting *Schlup*, 513 U.S. at 329).  Therefore, to be entitled to equitable tolling, it is Petitioner's burden to demonstrate that his is "one of those extraordinary cases where a credible claim of actual innocence has been established by new evidence."  *McSwain v. Davis,* 287 F. App'x 450, 461 (6th Cir. 2008).

Petitioner must support his claim "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Accordingly, "the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record."  *Doe v. Menefee,* 391 F.3d 147, 161 (2d Cir. 2004).

Petitioner argues that, contrary to the Magistrate's conclusion, Avery's 2006 recantation is reliable because "(1) it was the first time Avery fully explained the reasons behind his changing

4

stories; (2) it was motivated by nothing more than an attempt to clear his conscience; and (3) its veracity was supported by Avery's behavior afterward" (Doc. No. 18, at 6).  This Court is not persuaded.

The record reflects a history of Avery recanting his testimony.  The Ohio court of appeals noted at the trial of Lenworth Edwards, a co-defendant convicted of Blakely's murder, that Avery took the stand but refused to testify.  *State v. Edwards,* No. 92 CA005345, 1992 Ohio App. LEXIS 6394, at *2 (Ohio Ct. App. 1992).  The trial court held him in contempt and ordered that he be incarcerated until he agreed to testify.  When Avery returned, he testified that he had lied to the police, recanting his inculpatory statements.  The trial court granted Edwards' motion for a mistrial.

At Edwards' second trial, Avery testified that his original statements implicating Edwards were in fact true.  He then proceeded to testify as to Edwards' role in the assault and murder of Blakely.  Avery explained that the reason he perjured himself during the first trial was that he had been threatened while in the county jail.  Avery also testified during Petitioner's trial that he recanted his testimony given in Edwards' first trial because he felt threatened (Doc. No. 10-5, at 373).

In 2006, Avery once again recanted his initial story given to police.  Although Avery attempted to explain the reason for this most recent recantation, that explanation is not internally consistent.  According to his affidavit, Avery lied during Petitioner's trial because Avery's own father threatened him (Doc. No. 10-2, at 5-6).  However, the affidavit also states that on the night of Blakely's murder, Avery's father came to Avery and told him that Blakely was dead and that Avery was also going to be killed, so Avery's father allegedly attempted to get Avery "out of it" by setting up a meeting with police and instructing Avery to fabricate a story implicating Petitioner in the murder.  *Id.* at 4.  Avery asserts that he first resisted, but then capitulated after his father threatened

5

to kill him and his family.  Therefore, according to Avery's affidavit, Avery's father created a story to help his son avoid being killed by the people he believed actually killed Blakely, but his father would nonetheless kill Avery and his family if Avery refused to lie.

But wait, there's more.  Avery also claims he -- not his father -- "made up the story of what happened . . . based upon the pictures" he was shown while being questioned by police.  *Id.* at 3.  This too is contradicted by the record.  The "Detective Bureau Report" indicates that Avery was initially interviewed by police on September 11, 1991 and was able to provide information about the crime scene in that initial interview (Doc. No. 11-1, at 155, 157).  Avery's description of the crime scene was then corroborated by photos taken of the sealed apartment on September 18, 1991.  *Id.* Furthermore, at Petitioner's trial in 1996, Detective Taliano testified that he never showed Avery any photographs of the crime scene during their initial interview, but Avery was still able to provide details about the crime scene that only could have been known by someone present during the murder (Doc. No. 10-4, at 210-11).

The report also indicates that Avery told police that, while in Blakely's apartment on the day of the murder, Petitioner witnessed Blakely strike Edwards in the face (Doc. No. 11-1, at 155, 157).  The police recovered a jacket with blood on the front that Edwards admitted wearing on the night of Blakely's murder.  The blood was identified as belonging to Edwards.  The blood on this jacket helped verify Petitioner's recount of the events surrounding Blakely's murder shortly after it occurred.

Avery was also subject to cross-examination regarding many of the issues presented here (Doc. No. 10-5, at 334-379).  As the Ohio court of appeals noted: "Avery gave consistent lengthy testimony, subject to vigorous cross-examination" in the other *Blakely* trials before recanting his

testimony (Doc. No. 10-4, at 210). On the other hand, Avery's 2006 recantation was not subject to cross-examination and only consisted of an interview conducted in the presence of a court reporter.

Petitioner argues that Avery's assertion of his Fifth Amendment rights and refusal to testify at a hearing following his 2006 recantation demonstrates that his recantation is credible and his trial testimony is not. While this may be one inference, it is just as likely that Avery's refusal to disclose at trial the facts set forth in his affidavit demonstrates his trial testimony was truthful and his recantation false.

This Court does not agree that "the only reasonable conclusion is that the 2006 recantation is credible" (Doc. No. 18, at 6). Given all the evidence, including the facts discussed above, and Petitioner's history of repeatedly changing his story, Petitioner has not demonstrated that Avery's recantation is sufficiently reliable to warrant equitable tolling under the *Schlup* actual innocence standard.

### Nothing New

Petitioner must demonstrate that his proffered evidence is not only reliable, but is also "new." *See Schlup,* 513 U.S. at 324. Petitioner argues the Magistrate improperly concluded that Avery's recantation and other pieces of evidence were not new because, for purposes of the *Schlup* analysis, "new" does not mean "newly discovered," but rather "not presented to the jury" (Doc. No. 18, at 9). Respondent counters that Petitioner's evidence is not new because it was available to him at the time of his trial (Doc. No. 14, at 9). Petitioner acknowledges that there is no Sixth Circuit case definitively resolving the distinction, and instead relies on cases from other circuits (Doc. No. 18, at 9-10); *see Gomez v. Jaimet,* 350 F.3d 673, 679 (7th Cir. 2003); *Griffin v. Johnson,* 350 F.3d 956, 963 (9th Cir. 2003).

Although there is conflicting authority on this issue, district courts in this Circuit have held that "new" evidence means "newly discovered" evidence -- that is, evidence unavailable to the petitioner at the time of trial -- rather than evidence that was simply not presented to a jury. *See, e.g., Taylor v. Woods*, No. 2:09-CV-00189, 2010 U.S. Dist. LEXIS 20420, at *7 (W.D. Mich. 2010); *Rickard v. Wolfe*, No. 3:06-CV-2753, 2007 U.S. Dist. LEXIS 92447 (N.D. Ohio 2007); *Leggett v. U.S.*, Nos. 1:05-CV-732, 1:92-CR-233, 2006 U.S. Dist. LEXIS 78436, at *5-6 (N.D. Ohio 2006). Moreover, an unpublished opinion by the Sixth Circuit suggests it has the same understanding of the term. *See Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008) ("Because all of this evidence was available to Connolly when he pled on June 27, 1994 and would have been available to him at trial, none of it is 'new.'") (citing *Souter*, 395 F.3d at 590). This Court agrees with this interpretation and, accordingly, Petitioner's evidence is "new" only if it was unavailable to him at the time of trial.

The Magistrate's analysis on this point is well-reasoned. The evidence Petitioner argues is "new" was available at the time of trial (Doc. No. 18, at 10). The inconsistencies between Avery's trial testimony and his deposition testimony given shortly after Blakely's murder were raised at Petitioner's trial (Doc. No. 10-5, at 334-342). And, during cross-examination by Petitioner's counsel, Avery admitted to recanting his story during Edwards' trial (Doc. No. 10-5, at 373).

Furthermore, most of the evidence Petitioner offers was presented to the jury, albeit in different form. For example, the 1991 flight and probation records were available at the time of trial, though not presented to the jury. However, Petitioner presented alibi testimony at the trial suggesting he was in New York on the day of the murder and that he could not have flown back from New York in time to commit the murder (Doc. No. 10-6, at 74-86). Many of the sworn affidavits submitted by Petitioner are from individuals claiming that Petitioner was in New York on the date of the murder.

8

Again, there was testimony to this effect presented at trial and these statements do not constitute new evidence because they could have been discovered at the time of trial.  This evidence is merely cumulative.  The R&R also discusses why these statements are also unreliable (Doc. No. 15, at 35-36).

The only piece of evidence that could conceivably be considered new is the affidavit of forensic scientist Larry Dehus linking the murders of Floyd Epps and Marsha Blakely.  However, as the Magistrate pointed out, this does not demonstrate Petitioner's actual innocence.  It is possible he was involved in one murder without being involved in the other and does not, in light of all the other evidence, demonstrate that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup,* 513 U.S. at 327.

**Veracity is Unsupported**

Next, Petitioner argues the Magistrate did not apply the proper probabilistic analysis required by *Schlup.*  Specifically, Petitioner states that instead of determining what a reasonable juror *would* have concluded based upon the new evidence, the Magistrate determined what a reasonable juror *could* have concluded (Doc. No. 18, at 11-12).  This argument is unconvincing.

As Petitioner acknowledges, the Magistrate identified the correct standard (Doc. No. 15, at 24): "To establish actual innocence, 'a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *Souter,* 395 F.3d at 590 (quoting *Schlup,* 513 U.S. at 327).  Petitioner has simply isolated one statement from the R&R and concluded from it the Magistrate did not apply the standard set forth in *Schlup* and *Souter.*  However, reading the R&R as a whole, it is clear the Magistrate properly determined, based on all

9

the evidence, that Petitioner failed to show that "no reasonable juror would have found [him] guilty beyond a reasonable doubt." As discussed above, Petitioner's evidence was neither reliable nor new.

### Entire Record

Finally, Petitioner argues the Magistrate failed to consider Avery's recantation in light of all the evidence, but instead analyzed each piece of evidence independently (Doc. No. 18, at 15-17). The Court finds Petitioner's objection without merit. First, the R&R demonstrates that, contrary to Petitioner's assertions, the Magistrate did consider Avery's recantation in light of all the evidence. The R&R states: "After reviewing Avery's recantation *on its own and in light of the pre-existing evidence in the record,* the court does not find the recantation to be 'new evidence' sufficiently reliable or trustworthy to support applying equitable tolling" (Doc. No. 15, at 31).

Second, the R&R discusses the weakness of each piece of Petitioner's proffered evidence. Petitioner's evidence is neither new, because it was already presented in some form to the jury during Petitioner's trial, nor reliable. Petitioner acknowledges that "none of the evidence, taken alone, conclusively establishes [Petitioner's] innocence . . .," but nonetheless suggests that all the pieces together conclusively demonstrate Petitioner is actually innocent. However, Petitioner's inferential chain is only as strong as its weakest link. Here, all of Petitioner's evidence is weak and simply adding up these many weak inferences does not establish that any reasonable juror would find Petitioner innocent.

### CONCLUSION

After conducting a *de novo* review, Petitioner's objections are not well taken. Accordingly, this Court adopts the recommendations of the Magistrate and the Petition for Writ of Habeas Corpus is dismissed.

Furthermore, this Court declines to issue a certificate of appealability.  "To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Banks v. Dretke*, 540 U.S. 668, 705 ( 2004) *(*quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  Petitioner has failed to meet this standard. Even if this Court assumes Petitioner's proffered evidence qualifies as "new" under the standard of other circuits, he did not demonstrate it is also reliable, and therefore he is not entitled to equitable tolling of the statute of limitations.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

January 14, 2011